**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-1115_____

VICTORIA GALLAGHER, on behalf of herself and
all others similarly situated,

                          Plaintiffs,

vs.

TOTAL COMMUNITY OPTIONS, INC., a
Colorado Corporation; TOTAL LONGTERM CARE, INC.,
a Colorado Corporation; TOTAL COMMUNITY CARE, LLC,
a Colorado Limited Liability Company; TOTAL LONGTERM
CARE SOLUTIONS, LLC, a Colorado Limited Liability
Company; SENIORS! INC., a Colorado Corporation;
INNOVATIVE CARE MANAGEMENT, INC., a Delaware
Corporation; JOHNSON ADULT DAY PROGRAM, INC.,
a Colorado Corporation; and TOTAL COMMUNITY OPTIONS
FOUNDATION, a Colorado nonprofit corporation,

                          Defendants.

_____

**CLASS ACTION COMPLAINT AND JURY DEMAND**
_____

       Plaintiff Victoria Gallagher, on behalf of herself and all others similarly situated, brings

this Class Action Complaint and Jury Demand pursuant to Fed. R. Civ. P. 23 for injunctive relief

and actual and statutory damages against Defendants and alleges as follows:

1

# I.    __INTRODUCTION__

1.      This case arises out of a cyber-security breach (the "Data Breach") of Defendants'
systems that compromised the security of employees' private, sensitive, and confidential
information.

2.      In May 2016, current and former employees of Defendants learned that they were
the victims of a data breach resulting in the unauthorized transfer and disclosure of employees'
most sensitive, non-public personal identifying information ("PII"), including Social Security
numbers, salary and financial information, tax information, first and last names, addresses, and
tax form W-2 information.

3.      The employees' information was disclosed to cybercriminals whom were able to
perpetrate a breach of this depth and scope because Defendants failed to maintain reasonable and
adequate security measures and protect employees' information from access and disclosure.
Defendants are obligated, by statute, duty, and otherwise, to protect their employees'
employment and personnel records from unauthorized disclosure, dissemination, or access, yet
failed to prevent, detect, end, or limit the scope of the Data Breach.

4.      Defendants failed to implement reasonable security measures designed to prevent
this attack despite warnings from cyber-security and law enforcement professionals of this exact
type of cyber-attack and spoofing scam.  Defendants failed to enact security protocols designed
to detect the breach and failed to maintain basic security measures, such as access controls;
trainings; password protections with appropriate levels of complexity; encryption and other
measures that would have prevented the Data Breach or made it more difficult to access or steal

employees' information; and, in the event data were accessed or stolen, sufficient encryption rendering it unreadable.

5.     Plaintiff, who brings this proposed class action lawsuit on behalf of all current and former employees of defendants whose PII has been compromised (the "Class"), will have to remain vigilant for the rest of their lives to combat potential identity theft and tax fraud arising from the staggering amount of personal, financial, and tax information that is now in the hands of identity thieves.  Plaintiff and Class members' personal information can never be made private again.

6.     As a result of Defendants' conduct, Plaintiff and Class members have suffered and will continue to suffer actual damages and pecuniary losses, including costs associated with mitigating the risk of identity theft, costs for credit monitoring for their lifetime, identity theft insurance, tax fraud consequences, and costs associated with freezing and unfreezing financial and other accounts.

7.     Plaintiff, on behalf of the Class, seeks injunctive relief requiring Defendants to implement and maintain security practices to comply with regulations designed to prevent and remedy these types of breaches, as well as restitution, damages to compensate them for their current and future losses, and other relief as is appropriate.

## II.     PARTIES

8.     Plaintiff, VICTORIA GALLAGHER, is a resident of Colorado.  She is a former employee of "InnovAge," which does business through the defendant companies named herein. Plaintiff was employed by Defendants during the years from approximately 2005 through 2015.

Plaintiff was not employed by Defendants at the time of the Data Breach.  Plaintiff received a notice from Defendants, dated May 2, 2016, informing her of the Data Breach and stating that her information, along with that of other employees', had been compromised.

9.      Defendants conduct business and employ individuals across multiple states, doing business as "InnovAge," which refers to the parent company, TOTAL COMMUNITY OPTIONS, INC., and includes the affiliated entities TOTAL LONGTERM CARE, INC., a Colorado Corporation; TOTAL COMMUNITY CARE, LLC, a Colorado Limited Liability Company; TOTAL LONGTERM CARE SOLUTIONS, LLC, a Colorado Limited Liability Company; SENIORS! INC., a Colorado Corporation; INNOVATIVE CARE MANAGEMENT, INC., a Delaware Corporation; JOHNSON ADULT DAY PROGRAM, INC., a Colorado Corporation; and TOTAL COMMUNITY OPTIONS FOUNDATION, a Colorado nonprofit corporation, Total Longterm Care, Inc., Total Community Carenamed in this Class Action Complaint and Jury Demand.  Defendants conduct business in California, Colorado, and New Mexico.  Defendants' headquarters are in Colorado.

### III.     JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this lawsuit has been brought as a class action; upon information and belief, the aggregate claims of the putative class members exceed $5 million exclusive of interest and costs, and one or more of the members of the putative class are residents of a different state.

11.     This Court has personal jurisdiction over Defendants because Defendants maintains their headquarters in Colorado, conduct business in Colorado, and have sufficient minimum contacts with Colorado.  Personal jurisdiction is also invoked pursuant to Colo. Rev. Stat. Ann. § 13-1-124.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants resides in this district and a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in this district.

## IV.     FACTUAL ALLEGATIONS

13.     Plaintiff is a former employee of Defendants who worked for Defendants in the years from approximately 2005 until 2015.  She worked for Defendants in Colorado.

14.     As a condition of her offer of employment from Defendants, Plaintiff, along with every other employee of Defendants, was required to provide personal identifying information including first and last name, address, Social Security number, and to fill out tax forms providing additional confidential information to Defendants.

15.     Defendants retains this and other confidential information that is provided, by all current and former employees, on various computer systems.

16.     In providing their PII to Defendants, Plaintiff and all Defendants' employees have an expectation of privacy and confidentiality in the information that they provide as a condition of employment.

5

17.     Plaintiff and Defendants' employees also have an expectation of privacy and confidentiality in their salary information and tax information that is maintained on Defendants' systems.

18.     Defendants employ hundreds of people across three states.  As a result, Defendants are well versed in the requirements of confidentiality and obligations to safeguard and not disclose confidential information.

19.     On May 2, 2016, Plaintiff received a letter from a "Return Mail Processing Center" in Portland, Oregon.  The appearance of the letter and the nature and identity of the sender indicate that the communication was a form letter of the type that is mass produced and distributed in bulk to many recipients.   The letter contained a subject line stating, "Notice of Data Breach" and was attached to a document entitled, "Steps You Can Take to Protect Against Identify Theft and Fraud."

20.     The Notice of Data Breach indicates that, on April 8, 2016, Defendants experienced "an incident that may affect the security of your personal information" and describes that Defendants disclosed "2015 IRS Tax Form W-2 information" to cyber-criminals engaged in an email spoofing attack.  Before it was determined that the request was fraudulent, Defendants disclosed the Plaintiffs' and putative class members' names, home addresses, Social Security numbers, and 2015 compensation data.

21.     The Data Breach was not actually detected by Defendants until April 22, 2016, which was14 days after Defendants had disclosed the confidential information of its employees.

22.     As a result of the Data Breach, Defendants provided, to unauthorized cyber-criminals impersonating a company executive, Defendants employees' most sensitive, non-

public personal identifying information referred to commonly in data breach litigation as "PII," which included Social Security numbers, salary and financial information, tax information, first and last names, addresses, and other tax form W-2 information.

23.     On information and belief, the improper disclosure of this information affects numerous, perhaps hundreds, of Defendants' employees, all of whom had their confidential PII disclosed without their authorization or consent.

24.     In fact, on information and belief, every employee of Defendants in the year 2015, whether they are a current or former employee, had their information improperly disclosed as a result of the Data Breach.

25.     Cyber-attacks of this nature against American corporations are commonplace and foreseeable.

26.     Similar computer intrusions occur routinely in which cyber-criminals impersonate a high level executive within the corporation and send "phishing" or "spoofing" emails to employees of a company in which they request either access to confidential and sensitive information, or the transfer of money.

27.     These types of attempted intrusions into the computer systems of corporations are commonly referred to as Business E-mail Compromise Scams ("BEC") and phishing scams.

28.     As a result, law enforcement and cyber-security professionals consistently warn corporations about this exact type of cyber threat and provide best practice guidelines and trainings for preventing, detecting, and dealing with cyber-attacks.

29.     W-2 and employee PII is highly sought after information by cyber-criminals because that information allows for not only identity theft and future financial wrongs, but

fraudulent tax filings under the employees' names.  When cyber-criminals obtain this confidential information, it is commonly traded and sold on torrent networks and other unauthorized markets.

30. This information is at heightened risk at or around the April tax filing deadline as cyber-criminals attempt to file for and/or obtain fraudulent tax refund payments.

31. The Federal Bureau of Investigation provides updates and notifications of cyber-security threats including warnings about this exact type of threat.

32. In addition, the United States government and private security research firms widely distribute reports about new types of malicious cyber-security threats that should have put Defendants on notice that they were at risk.

33. Despite these and other warnings and having known or should have known of the potential for cyber-security threats, Defendants failed to maintain reasonable and adequate security measures to safeguard Plaintiff's and other employees' PII.

34. Given the recent increase of data breaches aimed at American corporations, Defendants should have adopted, implemented, and maintained security measures to protect their confidential data, including employees' PII.  Instead, Defendants failed to adopt, implement, or maintain the necessary security measures and chose instead to remain at risk for cyber-attacks and implemented only minimal precautions after they learned of the Data Breach.

35. On information and belief, Defendants' security practices fell below not only prudent industry standards for prevention, detection, and/or containment of cyber-hacking and computer intrusion, but also traditional, static cyber-attack security standards.

36.     Defendants also failed to maintain or employ reasonable intrusion prevention and detection protocols that would have prevented and immediately detected the breach and disclosure of confidential information as it occurred.

37.     As a result of the Data Breach, Plaintiff and Defendants' employees have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their PII is used; (ii) the diminution in the value and/or use of their PII entrusted to Defendants for the purpose of deriving employment from Defendants and with the understanding that Defendants would safeguard their PII against theft and not allow access and misuse of their PII by others; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of financial accounts; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and tax fraud; (vi) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (vii) unauthorized use of compromised PII to open new financial and other accounts; (viii) tax fraud and/or other unauthorized charges to financial and other accounts and associated lack of access to funds while proper information is confirmed and corrected; (ix) the continued risk to their PII, which remain in Defendants' possession and is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (x) future costs in terms of time, effort and money that will be expended, to prevent, detect,

9

contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

38.     As a result of Defendants' acts and omissions, including its negligent security practices, current and former Defendants employees are subject to an increased and concrete risk of identity theft and tax fraud due to the exposure of their personal and financial information, and they will have spent and will have to continue to spend substantial time and money securing their personal information and accounts and protecting their identities.

39.     Defendants' employees already have been the victim of identity theft and fraudulent tax filing.  For example, using the information disclosed by Defendants in the Data Breach, cyber-criminals submitted a fraudulent return the IRS using Plaintiff's PII. Consequently, Plaintiff's tax return was rejected for filing by the IRS, her tax refund has been delayed, and she has been forced to take steps to address the harm caused by Defendants' wrongful conduct in the Data Breach.

40.     Identity thieves and cyber-hackers use another's personal and financial information including the person's name, address, Social Security number, and financial information, without permission, to commit fraud and other crimes.  Identity thieves may commit various types of crimes, from immigration fraud, obtaining a driver's license or identification card in the victim's name, using the victim's information to obtain government benefits, to filing a fraudulent tax return using the victim's information to obtain refund payments.

41.     Identity thieves may also commit any number of other frauds, such as obtaining a job, procuring housing or even giving false information to police during an arrest. They can also

use victims' personal information to open new financial accounts and incur charges in another person's name, take out loans in another person's name, and incur charges on existing accounts.

42.     There is a strong likelihood that current and former Defendants' employees, are already or will become victims of identity fraud given the breadth of information about them that has been compromised and is now in the hands of cyber-criminals.

43.     Javelin Strategy & Research reported in its 2014 Identity Fraud Study that "[d]ata breaches are the greatest risk factor for identity fraud." In 2013, "one in three consumers who received notification of a data breach became a victim of fraud." Javelin also found increased instances of fraud other than credit card fraud, including "compromised lines of credit, internet accounts, and e-mail payment accounts such as PayPal."

44.     Defendants' employees' will need to monitor their accounts and credit, and will also need to pay for credit monitoring or credit reports to make sure their credit and identity is not harmed by thieves. Individuals whose bank information becomes compromised may have to pay fees to their banks for new debit and credit cards, or have to pay fees to have the cards shipped faster so that they do not have to wait weeks to make purchases on their accounts. These individuals may also lose access to their funds and time and money by spending hours on the phone or in person with banks and credit agencies trying to reverse unauthorized charges, clear up credit issues, order new cards, or deal with the devastating effects of tax fraud.

45.     Defendants has offered current and former employees 24 months of identity protection services from an identity monitoring services company. However, credit monitoring cannot prevent identity theft or fraud, even during the 24 month period offered by Defendants. Credit monitoring only informs a consumer of instances of fraudulent opening of new accounts.

If Defendants were to offer identity theft insurance, it only reimburses losses after they have

occurred. Neither of those services prevent identity theft or fraud by: (i) detecting sales of PII on

underground torrent networks or unauthorized markets before the PII is used to commit identity

theft or identity fraud; (ii) monitoring public records, loan data, or criminal records; (iii) flagging

existing accounts for fraud in order to thwart identity thieves' use of compromised PII before an

unauthorized transaction can be completed; or (iv) freezing credit, which prevents identity

thieves' ability to open new accounts with compromised PII.

46.     Plaintiff has already expended time, effort, and financial resources to begin to

deal with the devastating effects of having her most sensitive information compromised and now

in the hands of criminals.

47.     The United States government and privacy experts acknowledge that it may take

years for identity theft to come to light and be detected, and following the Data Breach, current

and former Defendants employees are now at risk for identity theft and tax fraud for the rest of

their lives.


## V.     CLASS ACTION ALLEGATIONS

48.     Plaintiff bring this action on her own behalf, as well as on behalf of all other

similarly situated individuals.

49.      Plaintiff's proposed class is defined as follows:

> All current and former employees of a Defendant in the United States whose PII
>
> was compromised as a result of the cyber-security breach (the "Data Breach") of

Defendants' systems that compromised employees' private, sensitive, and confidential information.

50.     As enumerated above, Defendants engaged in common acts, practices and policies that violated the Plaintiff's and Class Members' rights.  Accordingly, Plaintiff seeks certification of the proposed class under Fed. R. Civ. P. 23.

51.     Plaintiffs' claims meet the requirements for certification. There is a well-defined community of interest in the litigation and the Class Members are readily ascertainable.

a.      <u>Numerosity</u>:  The Class is so numerous that joinder of all Class Members is infeasible and impractical.  The membership of each of the class is unknown to Plaintiffs at this time.  However, based on Plaintiff's investigation, and on information and belief, the number of Class Members includes hundreds of current and former Defendants' employees.  The identity of Class Members is readily ascertainable from Defendants' employment records.

b.      <u>Typicality</u>: Plaintiff's claims are typical to those of the other Class Members because:

i.      Plaintiff is a member of the Class.

ii.     Plaintiff's claims stem from the same breach, practice or course of conduct that forms the basis of the class claims.

iii.    All of the Class Members' claims are based on the same facts and legal theories.

      iv.     There is no antagonism between Plaintiff's interests and the Class Members, because their claims are for damages provided to each individual employee.

      v.     The injuries that Plaintiff suffered are the same or similar to the injuries that the Class Members suffered and continue to suffer, and they are relatively small compared to the expenses and burden of individual prosecutions of this litigation.

c.     <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class because:

      i.     There is no conflict between Plaintiff's claims and those of the other Class Members.

      ii.     Plaintiff acknowledge that he has an obligation to make known to the Court any relationship, conflicts or differences with any Class Member.

      iii.     Plaintiff agree to actively participate in the case and protect the interests of the putative Class Members.

      iv.     Plaintiff has retained counsel experienced in handling class actions who have already devoted substantial time and resources to investigating the Class Members' claims and who will vigorously prosecute this litigation.

      v.     Plaintiff's claims are typical of the claims of Class Members in that their claims stem from the same practice and course of conduct that forms the basis of the class claims.

d.   <u>Superiority</u>:  Class action adjudication is superior to other methods of adjudication for at least the following reasons:

    i.   The common questions of law and fact described below predominate over questions affecting only individual members, and the questions affecting individuals primarily involve calculations of individual damages.

    ii.   The prosecution of separate actions by the Class Members could either result in inconsistent adjudications establishing incompatible pay practices or, as a practical matter, dispose of the legal claims of Class Members who are not parties to such separate adjudications.

    iii.   Individual Class Members would have little interest in controlling the litigation due to the relatively small size of most claims, and because Plaintiff Deckard and his attorneys will vigorously pursue the claims on behalf of the Class Members.

    iv.   A class action will be an efficient method of adjudicating the claims of the Class Member employees.

e.   <u>Commonality</u>:  There are questions of law and fact common to the Class Members, which predominate over any issues involving only individual class members, including but not limited to:

    i.   Whether Defendants had a legal duty to use reasonable security measures to protect class members' PII;

    ii.   Whether Defendants breached a legal duty by failing to protect class members' PII;

iii.   Whether Defendants acted reasonably in securing class members' PII;

iv.   Whether Defendants failed to establish appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of records and to protect against known and anticipated threats or hazards to the security and integrity of Class members' PII;

v.   Whether Defendants disclosed Class members' PII without their prior written consent;

vi.   Whether the information compromised by the Data Breach constituted a "trade secret" as defined by Colo. Rev. Stat. § 7-74-101 et. seq.

vii.   Whether Defendants' conduct was willful or with reckless disregard for the security of Class members' PII; and,

viii.   Whether Class members are entitled to actual damages and/or statutory damages; and

ix.   Whether Class members are entitled to declaratory judgment and injunctive relief;

f.   <u>Public Policy Considerations</u>:  Employers who fail to protect their employees' confidential information must be held accountable.  The value of individual employee's claims is often small as compared with the relative cost of litigation. Current employees are often afraid to assert their rights out of fear of retaliation particularly because Defendants attempt to intimidate employees from making claims.  Class actions provide putative Class Members who are not named in the

Complaint with a type of anonymity that allows for the vindication of their rights while at the same time protection their privacy.

## VI.      CAUSES OF ACTION

### Count One – Negligence

52.      Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

53.      Defendants owed Plaintiff and Class members a duty to take reasonable steps and security measures to maintain and protect against any dangers to Plaintiff and Class members' PII presented by cyber attackers.  This duty included, among other things, maintaining and testing Defendants' cyber security systems, taking reasonable security measures to protect and adequately secure the PII of Plaintiff and Class members from unauthorized access or disclosure, and taking reasonable steps to ensure that hackers did not compromise Plaintiff and Class members' PII.

54.      Defendants owed a duty to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate cyber security practices.  It was foreseeable that if Defendants did not take reasonable security measures to protect Plaintiff and Class members' PII, which Defendants required Plaintiff and Class members to provide as a condition of employment, the PII of Plaintiff and Class members would be subject to cyber-attacks and stolen.

55.     It was foreseeable that Defendants' systems would be a target of cyber-attacks and that Defendants would be subjected to computer intrusion involving impersonation of a high level executive sending phishing emails to request employee PII.

56.     Employees' W-2 information is highly sought after by cyber criminals because that information allows for not only identity theft and future financial wrongs but fraudulent tax filings under the victims' name.

57.     Since at least 2015, cyber-security and law enforcement professionals have been warning businesses about W-2 phishing scams and computer intrusion involving the impersonation of company executives, including multiple warnings distributed by the Federal Bureau of Investigation.

58.     Defendants had the ability to sufficiently guard against cyber-attacks by implementing adequate measurers to protect PII from unauthorized disclosure or compromise. The costs borne by Defendants to ensure adequate safety measures is insignificant in view of the dangers posed to Plaintiff and Class members by Defendants' failure to take reasonable security measures.

59.     As a consequence of the Data Breach, cyber attackers were able to access and obtain confidential employee files which compromised the PII of Defendants' employees. Defendants have admitted that its current and former employees' PII was exposed as a result of the Data Breach.

60.     By failing to implement necessary measures to protect the PII and confidential information Defendants maintain on their current and former employees, Defendants departed from the reasonable standard of care and breached duties to Plaintiff and the Class.

61.     But for Defendants' failure to implement, maintain, and take adequate security measures to protect the PII of Plaintiff and Class members, the PII of Plaintiff and Class members would not have been stolen, Plaintiff and Class members would not have been injured, and Plaintiff and Class members would not be at a heightened risk of identity theft for their lifetime.

62.     Defendants' negligence was a substantial factor in causing the harm and injuries to Plaintiff and Class members.  As a direct and proximate result of Defendants' failure to exercise reasonable care in implementing and maintaining reasonable cyber security measures, the PII of Plaintiff and Class members was accessed by cyber attackers who can and will use the compromised PII to commit identity theft and tax fraud and various other forms of serious fraud thereby victimizing Plaintiff and Class members.

63.     As a direct and proximate result of Defendants' negligence, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their PII is used; (ii) the diminution in the value and/or use of their PII entrusted to Defendants for the purpose of deriving employment from Defendants and with the understanding that Defendants would safeguard their PII against theft and not allow access and misuse of their PII by others; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of financial accounts; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and tax fraud; (vi) costs associated with

the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (vii) unauthorized use of compromised PII to open new financial and other accounts; (viii) tax fraud and/or other unauthorized charges to financial and other accounts and associated lack of access to funds while proper information is confirmed and corrected; (ix) the continued risk to their PII, which remain in Defendants' possession and is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (x) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

## Count Two – Breach of Implied Contract

64.     Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

65.     Defendants offered employment to Plaintiff and Class members in exchange for compensation and other employment benefits.  To receive compensation and other employment benefits, Defendants required Plaintiff and Class members to provide their PII, including names, addresses, Social Security numbers, and other personal information.

66.     Defendants had an implied duty of good faith to ensure that the PII of Plaintiffs and Class members in its possession was only used to provide agreed-upon compensation and other employment benefits from Defendants.

67.     Defendants was required to reasonably safeguard and protect the PII of Plaintiff and Class members from unauthorized disclosure or uses.

68.     Plaintiff and Class members accepted the offer of employment from Defendants and fully performed their obligations under the implied contract with Defendants by providing their PII to Defendants among their other obligations.

69.     Plaintiff and Class members would not have provided their confidential PII to Defendants in the absence of their implied contracts with Defendants, and would have instead retained the opportunity to control their PII for uses other than compensation and other employment benefits from Defendants.

70.     Defendants breached the implied contracts with Plaintiff and Class members by failing to reasonably safeguard and protect Plaintiffs' and Class members' PII, which was compromised as a result of the Data Breach.

71.     Defendants' acts and omissions have materially affected the intended purpose of the implied contract requiring Plaintiff and Class members to provide their PII as a condition of employment in exchange for compensation and benefits.

72.     As a direct and proximate result of Defendants' breaches of its implied contracts with Plaintiff and Class members, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their PII is used; (ii) the diminution in the value and/or use of their PII entrusted to Defendants for the purpose of deriving employment from Defendants and with the understanding that Defendants would safeguard their PII against theft and not allow access and misuse of their PII by others; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket costs associated with the

21

prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of financial accounts; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and tax fraud; (vi) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (vii) unauthorized use of compromised PII to open new financial and other accounts; (viii) tax fraud and/or other unauthorized charges to financial and other accounts and associated lack of access to funds while proper information is confirmed and corrected; (ix) the continued risk to their PII, which remain in Defendants's possession and is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (x) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

## Count Three – Invasion of Privacy

73.     Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

74.     Plaintiff and Class members were required to provide their PII and other confidential personal information to Defendants as a condition of their employment.

75.     Defendants knew or should have known that the PII of Plaintiff and Class members is private and confidential information and cannot be disclosed to the public without authorization.

76.     Defendants therefore had an obligation and duty to safeguard and protect the PII of Plaintiff and Class members from any and all foreseeable attempts to obtain or disclose Plaintiff and Class members' PII to the public without authorization.

77.     As a result of the Data Breach, Plaintiff and Class members' PII, which constitutes private information, was disclosed without authorization to cyber criminals and identity thieves, whom constitute the public.

78.     Defendants breached its duty to Plaintiff and Class members, when it sent Plaintiff's and Class members' PII to a fake email address, disguised as a company executive's email, resulting in the Data Breach and public disclosure of Plaintiff and Class members' private information.

79.     As a direct and proximate result of Defendants' public disclosure of Plaintiff's and Class members' private information, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity to control how their PII is used; (ii) the diminution in the value and/or use of their PII entrusted to Defendants for the purpose of deriving employment from Defendants and with the understanding that Defendants would safeguard their PII against theft and not allow access and misuse of their PII by others; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of financial accounts; (v) lost opportunity costs associated with effort expended and the loss

of productivity addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and tax fraud; (vi) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased costs to use credit, credit scores, credit reports and assets; (vii) unauthorized use of compromised PII to open new financial and other accounts; (viii) tax fraud and/or other unauthorized charges to financial and other accounts and associated lack of access to funds while proper information is confirmed and corrected; (ix) the continued risk to their PII, which remain in Defendants's possession and is subject to further breaches so long as Defendants fails to undertake appropriate and adequate measures to protect the PII in its continued possession; and (x) future costs in terms of time, effort and money that will be expended, to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

### Count Four – Violation of Colorado Uniform Trade Secrets Act
### C.R.S. § 7-74-101 et. seq.

80.     Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

81.     Plaintiff and Class members' PII including Social Security numbers, salary and financial information, tax information, first and last names, addresses, and tax form W-2 information is known to each individually and to Defendants and is confidential.

82.     No person outside key employees within Defendants should have access to Plaintiff and Class members' PII without the individual's authorization and consent.

83.     Plaintiff and Class members' PII is highly sought after information by cyber criminals and those seeking a competitive business advantage.

84.     Defendants took precautions to guard the secrecy of Plaintiff and Class members' PII, despite the fact that Defendants' precautions were inadequate, which constitutes negligence and other claims as alleged herein.

85.     The combination of information consisting of Plaintiff and Class members' PII constitutes a trade secret under Colorado law.

86.     Plaintiff and Class members did not consent to the disclosure of their PII and confidential information.

87.     Defendants had a duty to maintain the secrecy and limit the use of Plaintiff's and Class members' PII and confidential information, which was provided to Defendants as a condition of Plaintiff and Class members' employment.

88.     Defendants misappropriated Plaintiff's and Class members' PII and confidential information when Defendants improperly disclosed without consent and such information was thereafter improperly acquired by cyber criminals and identity thieves whom used a phishing scam and improper means to acquire such information.

89.     At the time of the disclosure, Defendants knew or should have known, had they implemented reasonable security measures, that the unauthorized request for Plaintiff's and Class members' PII, which resulted in the disclosure of their confidential information, was from a cyber-criminal who had utilized improper means to acquire the confidential information.

90.     As a result of Defendants' misappropriation, Plaintiff and Class members suffered and continue to suffer damages and actual loss and are thereby entitled to damages for actual loss, damages for unjust enrichment, and exemplary damages in an amount to be proven at trial.

## Count Five – Declaratory Judgment

91.     Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

92.     As alleged herein, Plaintiff and Class members have stated claims against Defendants based on negligence and other legal theories.

93.     Defendants have failed to satisfy their obligations to take reasonable steps to maintain and protect against foreseeable dangers to Plaintiff's and Class members' PII presented to cyber attackers, as is evidenced by the Data Breach.

94.     At all times material hereto, Defendants continues to possess and maintain Plaintiff's and Class members' PII, and is therefore under a continuing obligation to take reasonable cyber-security measures to maintain and protect against foreseeable dangers to Plaintiff's and Class members' PII.

95.     The Data Breach has rendered Defendants' systems even more vulnerable to unauthorized access and requires that Defendants immediately take even more stringent measures to currently safeguard the PII of Plaintiff and Class members going forward.

96.     An actual controversy has arisen in the wake of the Data Breach regarding Defendants' current obligations to provide reasonable data security measures to protect the PII of Plaintiff and Class members.  On information and belief, Defendants maintains that its security

measures were, and remain, reasonably adequate.  On information and belief, Defendants further

denies that it previously had or now has any obligation to better safeguard the PII of Plaintiff and

Class members.

97.     Plaintiff and Class members thus seek a declaration that to comply with its

existing obligations, Defendants must implement specific additional, prudent industry security

practices, as outlined below, to provide reasonable protection and security to the PII of Plaintiff

and Class members.

98.     Specifically, Plaintiff and the Class seek a declaration that (a) Defendants'

existing security measures do not comply with its obligations; and (b) to comply with its

obligations, Defendants must implement and maintain reasonable security measures on behalf of

Plaintiffs and the Class members, including, but not limited to: (i) engaging third party security

auditors/penetration testers as well as internal security personnel to conduct testing consistent

with prudent industry practices including simulated attacks, penetration tests, and audits on

Defendants' systems on a period basis; (ii) engage third party security auditors and internal

personnel to run automated security monitoring consistent with prudent industry practices; (iii)

auditing, testing, and training its security personnel regarding any new or modified procedures;

(iv) purging, deleting and destroying, in a secure manner, employee data not necessary for its

business operations; (v) conduct regular database scanning and security checks consistent with

prudent industry practices; (vi) periodically conduct internal training and education to inform

internal security personnel how to identify and contain a breach when it occurs and what to do in

response to a breach consistent with prudent industry practices; (vii) formulate a policy that

limits and encrypts internal access to employee data consistent with prudent industry practices;

27

(viii) receive periodic compliance audits by a third party regarding the security of the computer systems Defendants uses to store the personal information of its current and former employees; (ix) meaningfully educate its current and former employees about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves from further future harm; and (x) provide ongoing identity theft protection, monitoring, tax fraud protection, and recovery services to Plaintiff and Class members for their lifetime.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, as a result of the foregoing, Plaintiff, on behalf of herself and the Class members, pray for relief and judgment against Defendants as follows:

a.  That this action be certified as a Class Action;

b.  That Plaintiff be appointed as representative of the Class members;

c.  That counsel for Plaintiff be appointed as Class Counsel;

d.  A finding that Defendants breached its duty to safeguard and protect the PII of Plaintiff and Class members that was compromised in the Data Breach;

e.  For damages, and all other appropriate legal and equitable relief;

f.  For appropriate injunctive and declaratory relief;

g.  For an award of pre-judgment and post-judgment interest;

h.  For reasonable attorneys' fees and costs; and

i.  For such further relief as this Court may deem just and proper.

## VIII.   JURY TRIAL DEMANDED

Plaintiff and Class members hereby demand a trial by jury on all issues so triable.

DATED:  May 13, 2016.

By: __/s/Daniel Kalish_____
  Daniel Kalish, CBA No. 11529
  **HKM EMPLOYMENT ATTORNEYS LLP**
  730 17th Street, Suite 900
  Denver, CO 80202
  Telephone: 303-991-3075
  E-mail: dkalish@hkm.com


  Donald W. Heyrich, WA Bar No. 23091[1]
  Jason A. Rittereiser, WA Bar No. 43628[1]
  **HKM EMPLOYMENT ATTORNEYS LLP**
  600 Stewart Street, Suite 901
  Seattle, WA 98101
  Telephone: 206-838-2504
  E-mail: dheyrich@hkm.com
      jrittereiser@hkm.com


  Peter D. Stutheit, OR Bar No. 061248[1]
  **STUTHEIT KALIN LLC**
  308 SW 1st Avenue, Suite 325
  Portland, OR 97204d
  Telephone: (503) 493-7488
  Email: peter@peterstutheit.com

  *Attorneys for Plaintiffs*

---

[1] Anticipated Admission Pro Hac Vice